IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MICHELLE GILMORE AND MICHAEL      :
GILMORE                           :
                                  :
                     Plaintiff,   :     2:14-CV-6367 (ABB)
                                  :
          - against -             :
                                  :
BRANT BICKEL, et al.,             :
                                  :
                     Defendants.  :
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Brant Bickel and Jos. A. Bank Clothiers, Inc. ("Defendants"), hereby submit this brief in support of their FED. R. CIV. P. 12(b)(6) motion to dismiss.

Plaintiff's Complaint must be dismissed for its failure to meet basic pleading standards. Plaintiff purports to assert a race discrimination and retaliation case against her former employer, Jos. A. Bank Clothiers, Inc. (hereafter, "Jos. A. Bank"). However, as detailed below, Plaintiff's Complaint is fundamentally flawed in its failure to set forth sufficient facts that could plausibly support a claim for "disparate treatment" or a "hostile work environment," and it cannot and does not satisfy the pleading standards articulated by the Supreme Court in *Twombly* and *Iqbal*. Her retaliation claim is also defective beyond remedy as Plaintiff failed to exhaust her administrative remedies with respect to that claim.

Plaintiff's Complaint should be dismissed in its entirety.

## The Complaint's Allegations[1]

Plaintiff Michelle Gilmore ("Gilmore") is an African-American female. (Compl. ¶ 7.) Around February 2013, she started working for Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank"). (Compl. ¶ 7.) Jos. A. Bank is a nationwide menswear retailer, which carries a full-selection of men's business attire, casual clothing, and accessories.[2]

In March 2013, about a month after Gilmore's hiring, Bickel became the store manager and her direct supervisor. (Compl. ¶ 7.) Gilmore alleges that, when an African-American customer would enter the store, Bickel would say "Why is this place so ghetto," or made other unspecified, alleged "racist epithets and jokes." (Compl. ¶ 9.) Gilmore also alleges that Bickel referred to African-American customers as "Sonia's people," in reference to another African-American employee, Sonia Kabia. (Compl. ¶ 10.)

Aside from these brief assertions, Gilmore makes no further allegations concerning racially-based comments, jokes, or other behavior and does not allege that any of the few alleged comments were directed at her.

Gilmore does allege that Bickel engaged in other assorted behaviors that she found objectionable. For instance, she asserts that he "made 'jokes' about customers with Muslim names." (Compl. ¶ 9.) And she further avers that Bickel indicated that another employee's "fat butt is not to sit" in a particular chair. (Compl. ¶¶ 9, 12.) Additionally, Gilmore complains that Bickel asked her to take a fellow employee shopping, because that employee "just lets it all hang out (her stomach and breast area)." (Compl. ¶ 11.) Gilmore does not, however, attempt to connect these comments to her race.

---

[1] Defendants only accept Plaintiff's allegations as true, as they must, for the purposes of this Motion to Dismiss and reserve the right to deny these allegations and demand strict proof thereof.

[2] *See generally* www.Jos.abank.com (last visited February 6, 2015). The Court can take judicial notice of background facts that are not reasonably in dispute.

"Around April 2013," Gilmore contends that she "confronted Bickel about his hostile attitude and also asked Bickel if she could work more hours at the store." (Compl. ¶ 13.) According to Gilmore, Bickel "apologized but did not respond to [her] request to work more hours." (Compl. ¶ 13.)

"Around the end of April," Gilmore states that she reported Bickel's alleged "racist behavior" to his corporate manager. (Compl. ¶ 14.) Gilmore claims that, during that call, she again asked about working more hours. (Compl. ¶ 14.) "Around May," Gilmore claims another "corporate representative" reached out to her to follow-up on her complaint. (Compl. ¶ 15.)

Gilmore formulaically concludes that "the harassment was pervasive and regular," and that, on May 16, 2013, she "quit because the hostile work environment became unbearable." (Compl. ¶¶ 16-17.)

Based on these allegations, Gilmore asserts claims of discrimination and retaliation claims against "Defendants," collectively, under Title VII and the Pennsylvania Human Relations Act ("PHRA"). Together with her husband, Gilmore also purports to assert a "loss of consortium" claim.

### Legal Standard

Rule 12(b)(6) motions to dismiss are governed by a "plausibility standard," which is guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, although the Court accepts all factual allegations as true, and draws all reasonable inferences in the plaintiff's favor, this "tenet" is "inapplicable to legal conclusions"; thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Id*. at 679. "In other words, a complaint must do more than allege the plaintiff's

entitlement to relief. [A] complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## Argument

### I. Gilmore's Race Discrimination Claims (Count I) Must be Dismissed

#### A. *Gilmore Pleads No Facts To Support Disparate Treatment*

In Count I, Gilmore directly challenges only the Company's alleged failure to increase her working hours. (Compl. ¶22) ("Defendants gave no reasons for not increasing Plaintiff's working hours"). However, her Complaint is utterly deficient to support a disparate treatment claim on those grounds.

In order to establish a prima facie case of disparate treatment, Gilmore must show: (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (describing the elements of a *prima facie* case). Although a plaintiff is not required to plead a prima facie case, she must still plead enough facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014) (citations and quotations omitted). In this case, Gilmore's Complaint establishes nothing more than her membership in a protected class. Absent from the Complaint are any factual allegations that would support the existence of an adverse employment action or an inference of discrimination in the Company's conduct, compelling dismissal of her discrimination claims.

An "adverse employment action" means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

4

742, 761 (1998). The action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004).

Here, Gilmore does not allege that she suffered *any* "change in employment status," much less a "significant" one. *Burlington Indus., Inc.*, 524 U.S. at 761. Instead, Gilmore alleges that *she* sought to "change" or "alter" her employment status (by seeking "more hours"), and that Jos. A. Bank ignored her request. Conversely, Gilmore "alleges no actions taken by [Jos. A. Bank] that were adverse." *See Stodulski v. Medline Indus., Inc.*, 2011 WL 5942127, at *4 (E.D. Pa. Nov. 28, 2011). Thus, as a matter of law, Jos. A. Bank's alleged inaction was not an "adverse employment action." *Id.* (employer's decision to take no action on proposed transfer request was not an "adverse employment action"); *McQuilkin v. Delaware River Port Auth.*, 2013 WL 5936983, at *14 (D.N.J. Nov. 6, 2013) (employer's "failure to invent a new position for Plaintiff" was not an adverse employment action).

Plaintiff's Complaint is properly dismissed because she does not and cannot plead an adverse employment action as required to sustain a disparate treatment claim. *Burlington Indus., Inc.*, 524 U.S. at 761; *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152 (3d Cir. 1999).

Gilmore's Complaint is also devoid of any facts to support an allegation that Jos. A. Bank's alleged failure to give her more hours occurred "under circumstances that raise an inference of discriminatory action." *See Sarullo*, 352 F.3d at 797. She does not "identify a similarly situated individual outside of the protected class" who "was treated more favorably." *Boone v. Penn. Southeastern Transp. Auth.*, 2014 WL 6861581 at *4 (E.D. Pa. Dec. 5, 2004) (quoting *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 170 (3d Cir. 2013)). Nor does she plead any other facts to suggest that Jos. A. Bank denied her additional hours for a

5

discriminatory reason. Her failure to plead *any* "circumstances that give rise to an inference of unlawful discrimination" dooms Gilmore's claim. *See*, *e.g.*, *Twillie*, 575 F. App'x at 31-32 (dismissing failure to promote claim for failing to plead "plausible allegations that raised a reasonable expectation that discovery will show" that the non-promotion was discriminatory); *Boon.*, 2014 WL 6861581 (dismissing sex discrimination claim because the complaint "d[id] not contain any allegations" that any similarly-situated male "was treated differently"); *Braddock v. SEPTA*, 2014 WL 6698306, at *4 (E.D. Pa. Nov. 25, 2014) (dismissing complaint because, "[w]ithout similarly situated comparators, I cannot infer from plaintiff's pleadings that members of a non-protected class were treated more favorably than plaintiff"); *Innella v. Lenape Valley Found.*, 2014 WL 3109973, at *3 (E.D. Pa. July 8, 2014); *Barthold v. Briarleaf Nursing & Convalescent Ctr. Nursing Home*, 2014 WL 2921534, at *3 (E.D. Pa. June 27, 2014).

Accordingly, Plaintiff's disparate treatment claim should be dismissed.

### B. *Gilmore Pleads Insufficient Facts To Support A Hostile Work Environment*

Defendants respectfully submit that Gilmore has not asserted a separate cause of action predicated on a hostile work environment. However, to the extent that Count I purports to set forth such a claim through incorporation of Plaintiff's mere reference to a "hostile work environment" (Compl. ¶17), it must be dismissed under prevailing pleading standards.

#### i. **Gilmore Does Not Plead a Hostile Work Environment**

Plaintiff must establish each of the following five elements to state a prima facie claim for a hostile work environment: (i) that she suffered intentional discrimination because of her race; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected her; (iv) the discrimination would detrimentally affect a reasonable person of the same race; and (v) there is a basis for employer liability. *See Torres v. City of Philadelphia*, 907 F.

6

Supp. 2d 681, 688 (E.D. Pa. 2012) (Brody, J., interpreting *Andreoli v. Gates*, 482 F.3d 641, 643 (3d Cir. 2007)).

Harassment only rises to the level of unlawful discrimination when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted); *Brooks v. CBS Radio, Inc.*, 342 F. App'x 771, 776 (3d Cir. 2009) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).  "[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). "To constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Tucker v. Merck & Co., Inc.* 2004 U.S. Dist. LEXIS 2658, at *11 (E.D. Pa. Feb. 20, 2004) (quoting *Al-Salem v. Bucks County Water & Sewer Auth.*, 1999 U.S. Dist. LEXIS 3609, at *5 (E.D. Pa. Mar. 25, 1999) and *Schwapp v. Town of Avon*, 118 F.3d 106, 110-11 (2d Cir. 1997)). Simple teasing, offhand comments and isolated incidents are insufficient to constitute discrimination through the alteration of the terms and conditions of employment. *Mayo v. Mercy Philadelphia Hospital*, 2011 U.S. Dist. LEXIS 29853, at *6 (E.D. Pa. Mar. 22, 2011); see also *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Gilmore also must show that race was a "substantial factor" in the harassment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996).

To begin with, most of the utterances that Gilmore identifies have nothing to do with race -- including alleged "jokes" about "Muslim names," and commentary about another employee's inappropriate work wardrobe and "fat butt." (Compl. ¶ 9, 11, 12). While Gilmore may disagree with these comments, Title VII is not "a general civility code" and relief is reserved only for those who have suffered severe and pervasive harassment <u>based on a protected characteristic</u>.[3] *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fey Ry. Co v. White*, 548 U.S. 53 (2006). These comments, wholly unrelated to race (and not even directed toward Gilmore), cannot support a claim of racial harassment and should be disregarded. *See Milano v. Fed. Exp. Corp.*, 2014 WL 5358998, at *3 (D.N.J. Oct. 20, 2014) (dismissing "hostile work environment" claim predicated on allegations unrelated to plaintiff's "membership in a protected class").

Indeed, Gilmore makes only two allegations connected to race: (1) at some unspecified date and time, "when an African-American customer entered the store, Bickel said, 'Why is this place so ghetto," or other unspecified "racist epithets and gestures"; and (2) Bickel referred also at some unspecified date and time to an African-American customer as "Sonia's people," in reference to another employee. (Compl. ¶ 9-10.) These two comments, without more, do not allege "enough facts" to state a claim. *See Chan v. Cnty. of Lancaster*, 2011 WL 4478283, at *18 (E.D. Pa. Sept. 26, 2011) (allegations that plaintiff was "commonly referred to as 'Chan Dynasty' and 'Princess'" insufficient to state a claim). For example in *Bellamy v. Waterfront Square Condominiums*, 2013 WL 607848, at *5 (E.D. Pa. Feb. 19, 2013), the Court found that allegations about a supervisor referring to African-Americans as "you people" and expressing contempt for Martin Luther King Day did not state a claim, absent factual allegations concerning "the frequency" of the alleged remarks, and "specific facts from which the Court may infer" that

---

[3] Gilmore does not allege a claim for religious discrimination. *See* Dkt No. 1.

the comments affected plaintiff's work performance.  Gilmore's Complaint is similarly defective.

Moreover, based on the Complaint, "no racist comment, written or spoken was ever" even allegedly "directed at [Gilmore] herself."  *Caver v. City of Trenton*, 420 F.3d 243, 263 (3d Cir. 2005).  And "comments referring to other individuals that were merely overheard by [Gilmore] are the sorts of offhanded comments and isolated incidents that . . . should not be considered severe or pervasive enough to constitute a hostile work environment."  *Id.* (quotations and citations omitted); *see Mondero v. Lewes Surgical & Med. Associates, P.A.,* 2014 WL 6968847, at *4 (D. Del. Dec. 9, 2014) (dismissing claim because alleged offensive comments not directed at plaintiff).

In sum, Gilmore's Complaint contains five comments: three of which, based on Gilmore's own allegations, were unrelated to race, and all of which were not directed to Gilmore.  Even accepting the allegations as true, the two arguably race-related comments do not establish an environment "permeated with discriminatory intimidation, ridicule, and insult."  And other than a conclusory allegation that "harassment" occurred "daily" (Compl. ¶16), Gilmore does not allege a single fact that would permit the Court to infer that the alleged harassment was severe or pervasive or altered the conditions of her employment.  *See Sandor v. Borough*, 2014 WL 6673863, at *5 (W.D. Pa. Nov. 24, 2014); *Obotetukudo v. Clarion Univ.*, 2014 WL 3870003, at *8 (W.D. Pa. Aug. 6, 2014) (no hostile work environment claim because alleged racial comments "lack temporal connections making it impossible" to infer "severe or pervasive" conduct).  *See Chan*, 2011 WL 4478283, at *19 (generic allegation that derogatory insults were "common" insufficient to plead severity or pervasiveness).

9

A hostile work environment should focus on the totality of the circumstances, as opposed to individual incidents. *Cardenas v. Massey*, 269 F.3d 251, 261 (3d Cir. 2001). Reviewing Gilmore's Complaint in its entirety confirms that the facts pled, even if true, could not establish severe or pervasive conduct motivated by discriminatory animus or that such conduct affected her working conditions. As such she has not shown a plausible entitlement to relief under a hostile work environment theory.[4]

### ii.    Gilmore Does Not Plead a Constructive Discharge

Beyond a simple hostile work environment, Gilmore also appears to allege a constructive discharge claim. (Compl. ¶16) To plead a constructive discharge, Gilmore must allege facts showing that the "employer knowingly permitted conditions of employment so intolerable that a reasonable person subject to them would resign." *Aman,* 85 F.3d at 1084. In other words, to plead a constructive discharge, Gilmore must plead facts showing not just a "hostile work environment," but an "intolerable one." Here, however, Gilmore does not even meet the lesser burden of pleading a hostile work environment. Thus, *ipso facto*, she cannot sufficiently plead a constructive discharge. *See Spencer v. Wal-Mart Stores, Inc.,* 469 F.3d 311, 317 n.4 (3d Cir. 2006) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.").

---

[4] Further, the nature of a hostile work environment claim means that there is no "reasonable expectation" that Gilmore will be able to augment her claim through discovery. *Twillie*, 575 F. App'x at 31. Tautologically, Gilmore must already know the factual reasons why she considered her work environment hostile; "it is not information that [she] would obtain through discovery." *Wolman v. Catholic Health Sys. of Long Island, Inc*., 2011 WL 1741905, at *3 (E.D.N.Y. May 5, 2011), *aff'd*, 711 F.3d 106 (2d Cir. 2013) (addressing FLSA claims). Thus, there is no reason to permit Gilmore to "hid[e] the ball," and force Defendants to incur "substantial litigation costs" on a potentially meritless claim. *See id.* (further noting that the *Iqbal/Twombly* inquiry is "context-specific").

### C. *Gilmore's PHRA Claim (Count III) Fails for the Same Reasons*

In addition to her Title VII claim, Gilmore also asserts race discrimination under the PHRA. (Compl. ¶ 27-30.) Title VII and the PHRA contain "identical" protections, so courts construe "the two acts interchangeably." *Huston v. Procter & Gamble Paper Products Corp.*, 568 F.3d 100, 104 n. 2 (3d Cir. 2009). Accordingly, Gilmore's PHRA claim for race discrimination must be dismissed for the same reasons that her Title VII claim cannot survive.

## II. Gilmore's Retaliation Claim (Count II) Must Be Dismissed

In addition to race discrimination, Gilmore also asserts retaliation under Title VII (but not under the PHRA). (Compl. ¶ 24-26.) This claim suffers varied defects.

### A. *The Retaliation Claim Must Be Dismissed Due to Gilmore's Failure To Exhaust Administrative Remedies*

Before commencing a Title VII action in federal court, a plaintiff must exhaust her administrative remedies by filing a timely Charge of Discrimination with the EEOC, and receiving a right-to-sue letter from the EEOC after it investigates the Charge. 29 U.S.C. ¶ 626(d)(1). Here, Gilmore "dual-filed" a discrimination complaint with both the EEOC and the Pennsylvania Human Relations Commission. This "dual-filed" complaint asserted discrimination claims. (*See* PHRC Complaint, attached as Ex. A.) But it did not assert any claims for retaliation. (*Id.*) "As a general rule, a plaintiff under Title VII cannot bring claims in a civil lawsuit that were not first included in an EEOC charge and exhausted at the administrative level." *Johnson v. Chase Home Fin.*, 309 F. Supp. 2d 667, 671 (E.D. Pa. 2004) (dismissing retaliation claim for failure to exhaust) (internal citation omitted); *Thomas v. St. Mary Med. Ctr.*,

11

2014 WL 2199408 (E.D. Pa. May 23, 2014). Consequently, Gilmore's retaliation claim (Count II) must be dismissed for this reason alone.[5]

### B. The Complaint Fails to Plead A Retaliation Claim

Even if Gilmore can somehow show that she exhausted her administrative remedies (and she cannot), she has failed to properly plead a retaliation claim.

A *prima facie* case of retaliation requires a plaintiff to show that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Blakney v. City of Philadelphia*, 559 F. App'x 183, 185 (3d Cir. 2014) (internal citation omitted). Accordingly, to survive a motion to dismiss, a plaintiff must plead enough facts to "raise a reasonable expectation that discovery will reveal evidence" for each of these prongs. *Twillie,* 575 F. App'x at 31. Although Gilmore alleges that she complained about Bickel, she does not adequately plead facts that suggest that she could establish the other requisite elements.

**First**, as noted above, Ms. Gilmore fails to identify any adverse employment action. This is because her claim that Jos. A. Bank ignored her request to work "more hours" is not an "employment action" of any kind. Nor does Ms. Gilmore plead facts to show that her request would have reflected a "significant" change in her employment. *See supra* at p. 5.

**Second**, Ms. Gilmore pleads no facts to support a "causal connection" between her protected activity, and Jos. A. Bank's failure to grant her request for "more hours." At best, she

---

[5] Exhaustion requirements under the PHRA are evaluated under the same standard applied in Title VII claims. *Atkinson v. Lafayette College*, 460 F.3d 447, 453 (3d Cir. 2006) (applying the federal standard for determining whether administrative remedies had been exhausted in dismissing Title VII and PHRA retaliation claims). Therefore, to the extent Gilmore asserts that her claim under the PHRA (Count III) is intended to encompass retaliation as well as discrimination, the retaliation portion of her claim is fatally flawed due to her failure to exhaust her administrative remedies with respect to this claim.

pleads that she requested more hours at the same time that she first complained about Bickel's purported "hostile attitude." (Compl. ¶ 13.) But this cannot salvage her retaliation claim. Any effort to base a retaliation claim on the contemporaneous nature of her complaint and the request for more hours merely reflects a *cum hoc, ergo propter hoc* fallacy ("with this, therefore because of this"). *See, e.g., Nifas v. Coleman*, 2012 WL 707063, at *14 (W.D. Pa. Feb. 9, 2012), *R&R adopted* at 2012 WL 707035 (W.D. Pa. Mar. 5, 2012), *aff'd,* 528 F. App'x 132 (3d Cir. 2013) (citing authority for proposition that "a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*"); *Steshenko v. Gayrard*, 2014 WL 4904424, at *10 (N.D. Cal. Sept. 29, 2014) (plaintiff must plead "sufficient facts showing a causal nexus," not merely a "post hoc, ergo propter hoc" fallacy); *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 133 (S.D.N.Y. 2012) *aff'd,* 556 F. App'x 56 (2d Cir. 2014); *see Bingaman v. Bingaman,* 2009 WL 2424641, at *6 (M.D. Pa. Aug. 5, 2009) ("*post hoc ergo propter hoc* allegation is insufficient to plead a pattern of antagonism or the inference of retaliation"). Without more factual detail, Gilmore has not "nudg[ed]" her assertion of retaliation over from "conceivable" to "plausible." *Iqbal*, 556 U.S. at 680. Thus, the retaliation claim must be dismissed for this additional reason.

### III.     The Loss of Consortium Claim Is Baseless

Aside from discrimination and retaliation, "Plaintiffs," collectively, also assert a common law loss of consortium claim. (*See* Compl. ¶¶ 32-33.) This claim must be dismissed for three reasons.

First, under Pennsylvania law, "[a] spouse's right to recover under an employment discrimination statute does not support a loss of consortium claim." *Nerosa v. Storecast Merch. Corp.*, 2002 WL 1998181, at *9 (E.D. Pa. 2002) (internal citations omitted); *see, e.g., Burgess v. Dollar Tree Stores, Inc.,* 2015 WL 463936, at *2 (E.D. Pa. Feb. 4, 2015); *Blum v. Council Rock Sch. Dist.*, 2003 WL 1873617, at *6 (E.D. Pa. Feb. 14, 2003); *Danas v. Chapman Ford Sales,*

*Inc.*, 120 F. Supp. 2d 478, 489 (E.D. Pa. 2000); *Tate v. Gus Genetti's Hotel & Rest., Inc.*, 2006 WL 2990395, at *1 (M.D. Pa. 2006).

Second, assuming *arguendo* that an employment statute could support a loss of consortium claim, any such claim would necessarily derive from Gilmore's other claims. *Hill v. City Of Philadelphia*, 331 F. App'x 138, 143 (3d Cir. 2009). Because Gilmore's statutory claims must be dismissed, the derivative loss of consortium claim fails as well. *Id.*

Third, even putting aside these problems, the Complaint pleads no facts to support the loss of consortium claim. Instead, the Complaint merely engages in a "threadbare recital" of the cause of action, which is insufficient. *Iqbal*, 556 U.S. at 663.

## IV. All Claims Against Bickel Under Title VII Must Be Dismissed

For the reasons addressed above, the Complaint's claims must be dismissed in their entirety. However, as additional grounds for dismissal, the Title VII claim must be dismissed as to Bickel because there is no individual liability under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996). Accordingly, Gilmore's bald attempt to assert Counts I and II against "Defendants" collectively is without basis. (*See* Compl. ¶¶ 21-23, 25-26.) Thus, beyond the general pleading defects addressed herein, Counts I and II must be dismissed as to Bickel.

## Conclusion

Based on the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

Dated: February 27, 2015                    Respectfully submitted,

/s Jacob Oslick_____
Jacob Oslick (PA #311028)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
Telephone:    (212) 218-6480
Facsimile:    (212) 218-5526
joslick@seyfarth.com

Raymond C. Baldwin, *pro hac vice motion forthcoming*
Christine M. Costantino, *pro hac vice motion forthcoming*
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
Telephone:    (202) 463-2400
Facsimile:    (202) 828-5393
rbaldwin@seyfarth.com
ccostantino@seyfarth.com